UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:22-CV-22868-KMM

JABRETTA REASON,

     Plaintiff,

v.

CARNIVAL CORPORATION & PLC,

     Defendant.

_____/

**SECOND AMENDED COMPLAINT FOR DAMAGES
AND DEMAND FOR TRIAL BY JURY[1]**

     Plaintiff, JABRETTA REASON (hereinafter "REASON"), through undersigned counsel, sues Defendant, CARNIVAL CORPORATION & PLC, (hereinafter "CARNIVAL"), and demands trial by jury, stating as follows:

**PARTIES AND JURISDICTION**

     1.    REASON seeks damages in excess of $75,000.00, exclusive of interest, costs, and attorneys' fees.

     2.    This Court has admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333.

     3.    This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332, as the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different states and/or citizens of a state and citizens or subjects of a foreign state.

---

[1] REASON opts to leave her former Count VI, non-medical vicarious liability, out of this second amended complaint, but reserves the right to seek to amend at a later date if discovery reveals a negligent employee's identity that a party is vicariously liable for.

4.     Suit is filed in federal court because of the federal forum selection clause in the passenger contract ticket issued by CARNIVAL.

5.     REASON is *sui juris* and is a resident and citizen of the state of Florida.

6.     CARNIVAL is a citizen of the state of Florida and the nations of Panama and the U.K.

7.     CARNIVAL is a foreign corporation who is authorized to conduct and who does conduct business in the state of Florida, who at all times material hereto was and is doing business in Miami-Dade County, Florida, and who maintains its corporate headquarters and principal place of business in Miami-Dade County, Florida.

8.     CARNIVAL, at all times material hereto, personally and/or through an agent, in Miami-Dade County, Florida, in the Southern District of Florida:

   a.     Operated, conducted, engaged in, or carried on a business venture; and/or

   b.     Had an office or agency; and/or

   c.     Engaged in substantial activity; and/or

   d.     Committed one or more of the acts stated in Florida Statutes, §§ 48.081, 48.181 or 48.193.

9.     All conditions precedent for filing and maintaining this action have been fulfilled, have been waived, or do not apply.

## DEFINITIONS AND FACTUAL ALLEGATIONS

10.    At all times material hereto, CARNIVAL owned, leased, chartered, operated, maintained, managed, and/or controlled the subject gangway involved in REASON'S incident.

11.    At all times material hereto, CARNIVAL owned, leased, chartered, operated, maintained, managed, and/or controlled the subject cruise ship, the *Spirit*.

12.   REASON'S incident occurred on or about March 15, 2022, while she was a fare paying passenger on CARNIVAL'S vessel, the *Spirit*.

13.   On or about March 15, 2022, at approximately 9:15 a.m., the ship was disembarking passengers in Bimini in the Bahamas. REASON was going down the gangway attached to the ship, when she slipped and fell on the unreasonably slippery gangway. The floor of the gangway was unreasonably slippery, raised, elevated, and steep, there was no adequate anti-slip strip on the gangway, and there was no adequate slip-guard on the subject gangway. Moreover, there was an unreasonable number of passengers crowding on the subject gangway, approximately 5-10, who were also not spacing themselves at least six feet apart from each other, caused by CARNIVAL'S lack of reasonable crowd control, since CARNIVAL's own policies and procedures require that crowds this large not be allowed to descend its gangways at the same time. The unreasonable crowding prevented REASON from being able to see any dangerous conditions in front of her, as many of these passengers were in front of her when she fell.

14.   Each of these dangerous conditions mentioned in **paragraph 13** above was sufficient by itself to cause, **and did cause REASON'S incident and injuries**, and REASON is alleging that CARNIVAL was negligent as to each of these conditions alternatively.

15.   As a result, she sustained severe injuries that include, but are not limited to, a right shoulder dislocation, a tear of her right rotator cuff, and fractures to her right shoulder, and other serious injuries, which require surger(ies).

16.   After REASON was taken to the ship's medical center by wheelchair, the ship's doctor failed to diagnose her injuries, including her torn rotator cuff and fractures. Moreover, REASON was prescribed an insufficient amount of pain medicine for her trip home, such that she was in great pain for a longer amount of time.

17.   CARNIVAL either knew or should have known of the risk-creating and/or dangerous conditions discussed in **paragraph 13** of this complaint, due to reasons that include, but are not limited to, the following:

a.   When REASON fell, she heard that someone behind her had been telling the crew to help an elderly woman down the ramp so she also wouldn't fall, indicating that CARNIVAL knew the subject gangway was a slippery hazard at the time of her fall.

b.   Furthermore, REASON observed CARNIVAL'S crewmembers near the subject gangway at the time of the incident, and these crewmembers were in the immediate vicinity thereof, such that REASON reasonably infers that these crew members regularly used, observed, and tended to the subject gangway, and therefore were or should have been aware of the dangerous and/or risk-creating conditions thereof, and warned of and/or removed these conditions, and/or more reasonably controlled the crowd.

c.   CARNIVAL participated in the installation and/or design of the subject gangway, or alternatively, CARNIVAL accepted the gangway with its design defects present after having been given an opportunity to inspect the ship and materials on it, including the subject gangway, such that CARNIVAL should have known of the design defects of the subject gangway and gangway before providing them for public use. These design defects include, but are not limited to, the non-crowd control dangers outlined in **paragraph 13** of this complaint.

d.   Both prior to and after the subject incident, CARNIVAL installed and/or refitted similar gangways on other ships in CARNIVAL'S fleet to make them less slippery.

e.   There are relevant safety standards/recommendations/other guidelines regarding the

safety of the subject gangway and crowd control, including, but not limited to, prohibitions and/or recommendations against the deficiencies discussed in **paragraph 13** of this Complaint, and CARNIVAL should have known of these standards/recommendations/other guidelines because whether such standards/recommendations/other guidelines are legally required for CARNIVAL to comply with or not, a fact-finder is entitled to determine, if it so choses, that these standards/recommendations/other guidelines show what a reasonable cruise line should have done.

f.   CARNIVAL also knew or should have known of these dangerous conditions through inspecting the subject gangway involved in REASON'S incident, and if it did not know of these dangerous conditions, this was because CARNIVAL failed to adequately inspect the subject gangway prior to her incident.

g.   Previous passengers suffered prior slip and fall incidents in prior cases involving similar gangways on its ships, including, but not limited to, *Sobrado v. Carnival Corporation*, Case 1:20-cv-20734-KMW (Slip and fall on CARNIVAL's gangway); *Cavitt v. Carnival Corp.*, No. 20-22259-CIV, 2021 WL 1998368, at *1 (S.D. Fla. May 19, 2021) ("Plaintiff, Linda Cavitt, was a passenger onboard Defendant's cruise ship, the Carnival M/S "Fascination." She alleges that on March 10, 2019, she was descending the ship's gangway to disembark in Puerto Rico when **she slipped and fell on a wet and slippery section of the gangway**.") (emphasis added); *see also McBride v. Carnival Corp.*, No. 1:16-CV-24894-JLK, 2019 WL 4731955, at *1 (S.D. Fla. July 2, 2019) ("a. The subject gangway was **too steep**; and/or b. The subject gangway contained a defect, either a gap or **change of elevation**, that caused

Defendant's employee/crewmember to lose control of said wheelchair, causing Plaintiff severe injury.") (emphasis added).

h.   Moreover, CARNIVAL knew or should have known of these dangerous conditions for other reasons that will be revealed through discovery.

18.   At all times relevant, the subject gangway was unreasonably dangerous, risk-creating, defective, improperly designed, improperly installed, and/or otherwise unsafe.

19.   The subject gangway and the vicinity lacked adequate safety features to prevent or minimize REASON'S incident and/or injuries.

20.   These hazardous conditions were known, or should have been known, to CARNIVAL in the exercise of reasonable care.

21.   These hazardous conditions existed for a period of time before the incident.

22.   At all times relevant, CARNIVAL failed to adequately inspect the subject gangway and the vicinity for dangers, and CARNIVAL failed to adequately warn REASON of the dangers.

23.   At all times relevant, CARNIVAL failed to maintain the subject gangway and the vicinity in a reasonably safe condition.[2]

24.   At all times relevant, CARNIVAL had the ability to cure the deficiencies and to eliminate the hazards, but failed to do so.

25.   These conditions were neither open nor obvious to REASON.

26.   At all times relevant, CARNIVAL participated in the design and/or approved the design of the subject gangway and the vicinity involved in REASON'S incident.

---

[2] For example, CARNIVAL failed to failed to keep the subject gangway's ridges and/or whatever other intended anti-slip measures CARNIVAL intended to be in place adequately ridged and/or otherwise slip-resistant to prevent the subject gangway from becoming unreasonably slippery at the time of REASON's fall.

27.    At all times relevant, CARNIVAL participated in the installation and/or approved the installation of the subject gangway and the vicinity involved in REASON'S incident.

28.    The crewmembers of the *Spirit* were in regular full-time employment of CARNIVAL and/or the ship, as salaried crewmembers.

29.    CARNIVAL's crewmembers, employees, and/or agents were subject to the ship's discipline and master's orders, and CARNIVAL had the right to hire and fire its crewmembers, employees, and/or agents.

30.    CARNIVAL is directly responsible and liable for their actions and the actions of its crewmembers, employees, and/or agents.

31.    The crewmembers, including the medical staff, were employees and/or actual agents and/or apparent agents of CARNIVAL, and acted within the course and scope of their employment and/or agency agreement and/or relationship.

32.    The crewmembers were represented to REASON and the ship's passengers as employees of CARNIVAL through signs, documents, and/or uniforms. The crewmembers were also paid a salary and/or hourly wage by CARNIVAL. CARNIVAL knew that the crewmembers represented themselves to be employees of CARNIVAL and allowed them to represent themselves as such. REASON detrimentally relied on these representations as REASON would not have proceeded on the subject cruise had REASON believed the crewmembers were not employees of CARNIVAL.

**COUNT I**
**NEGLIGENT FAILURE TO INSPECT**

33.    REASON hereby adopts and re-alleges each and every allegation in paragraphs 1-22 and 28-32, as if set forth herein.

34.    CARNIVAL owed a duty to exercise reasonable care under the circumstances for the

safety of its passengers.

35.    This duty includes, but is not limited to, the duty to provide its passengers reasonable care by adequately inspecting the subject gangway and the vicinity to make sure the subject gangway and the vicinity were reasonably safe for the use and enjoyment of its passengers.

36.    At all times material, CARNIVAL, through its vessel, crew, agents, employees, staff and/or representatives, who were acting in the course and scope of their employment and/or agency with CARNIVAL breached the duty of reasonable care owed to REASON and were negligent by failing to adequately inspect the subject gangway and the vicinity to make sure the subject gangway and the vicinity were reasonably safe, such that the unreasonably risk creating and/or dangerous conditions discussed **paragraph 13** of the instant Complaint were present at the time of REASON'S incident.

37.    CARNIVAL either knew or should have known of these risk-creating and/or dangerous conditions, due to reasons that include, but are not limited to, the reasons discussed in paragraph 17 of the instant Complaint.

38.    These risk-creating and/or dangerous conditions were caused by CARNIVAL'S failure to adequately inspect the subject gangway and the vicinity to make sure the subject gangway and the vicinity were reasonably safe.

39.    CARNIVAL'S negligence proximately caused REASON great bodily harm in that, but for CARNIVAL'S negligence, REASON'S injuries would not have occurred.

40.    As a result of CARNIVAL'S negligence, REASON has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, lost wages, lost earning capacity, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of the value of REASON'S

vacation, cruise, and transportation costs.

41.   The losses are permanent and/or continuing in nature.

42.   REASON suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, JABRETTA REASON, demands judgment against Defendant, CARNIVAL CORPORATION & PLC, for damages suffered and costs incurred, as well as for damages and costs that REASON will suffer and incur in the future, as a result of her bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, lost wages, lost earning capacity, loss of the value of REASON'S vacation, cruise, transportation costs, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life, for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

### COUNT II
### <u>NEGLIGENT FAILURE TO MAINTAIN</u>

43.   REASON hereby adopts and re-alleges each and every allegation in paragraphs 1-21, 23, and 28-32, as if set forth herein.

44.   CARNIVAL owed a duty to exercise reasonable care under the circumstances for the safety of its passengers.

45.   This duty includes, but is not limited to, the duty to provide its passengers reasonable care by adequately maintaining the subject gangway and the vicinity.

46.   At all times material, CARNIVAL, through its vessel, crew, agents, employees, staff and/or representatives, who were acting in the course and scope of their employment and/or agency with CARNIVAL, breached the duty of reasonable care owed to REASON and were negligent by failing to adequately maintain the subject gangway and the vicinity, such that the non-crowd

control related unreasonably risk creating and/or dangerous conditions discussed **paragraph 13** of the instant Complaint were present at the time of REASON'S incident.

47.   CARNIVAL either knew or should have known of these risk-creating and/or dangerous conditions, due to reasons that include, but are not limited to, the reasons discussed in paragraph 17 of the instant complaint.

48.   Moreover, these risk-creating and/or dangerous conditions were caused by CARNIVAL'S failure to adequately maintain the subject gangway and the vicinity.

49.   CARNIVAL'S negligence proximately caused REASON great bodily harm in that, but for CARNIVAL'S negligence, her injuries would not have occurred.

50.   As a result of CARNIVAL'S negligence, REASON has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, lost wages, lost earning capacity, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of the value of REASON'S vacation, cruise, and transportation costs.

51.   The losses are permanent and/or continuing in nature.

52.   REASON has suffered these losses in the past and will continue to suffer such losses in the future.

**WHEREFORE**, Plaintiff, JABRETTA REASON, demands judgment against Defendant, CARNIVAL CORPORATION & PLC, for damages suffered and costs incurred, as well as for damages and costs that REASON will suffer and incur in the future, as a result of her bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, lost wages, lost earning capacity, loss of the value of REASON'S vacation, cruise, transportation costs, loss of important bodily functions, loss of

independence, and loss of capacity for the enjoyment of life, for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

**COUNT III**
**<u>NEGLIGENT FAILURE TO REMEDY</u>**

53.   REASON hereby adopts and re-alleges each and every allegation in paragraphs 1-21, 24, and 28-32, as if set forth herein.

54.   CARNIVAL owed a duty to exercise reasonable care under the circumstances for the safety of its passengers.

55.   This duty includes, but is not limited to, the duty to provide its passengers reasonable care by adequately remedying the subject gangway and the vicinity.

56.   At all times material, CARNIVAL, through its vessel, crew, agents, employees, staff and/or representatives, who were acting in the course and scope of their employment and/or agency with CARNIVAL, breached the duty of reasonable care owed to REASON and were negligent by failing to adequately remedy the subject gangway and the vicinity, as well as the unreasonable crowding on the gangway, such that the unreasonably risk creating and/or dangerous conditions discussed in **<u>paragraph 13</u>** of the instant Complaint were present at the time of REASON'S incident.

57.   CARNIVAL either knew or should have known of these risk-creating and/or dangerous conditions, due to reasons that include, but are not limited to, the reasons discussed in paragraph 17 of the instant Complaint.

58.   Moreover, these risk-creating and/or dangerous conditions were caused CARNIVAL'S failure to adequately remedy the subject gangway.

59.   CARNIVAL'S negligence proximately caused REASON great bodily harm in that, but for CARNIVAL'S negligence, her injuries would not have occurred.

**ARONFELD TRIAL LAWYERS**
**Aronfeld.com**
**Page 11 of 28**

60.   As a result of CARNIVAL'S negligence, REASON has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, lost wages, lost earning capacity, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of the value of REASON'S vacation, cruise, and transportation costs.

61.   The losses are permanent and/or continuing in nature.

62.   REASON has suffered these losses in the past and will continue to suffer such losses in the future.

**WHEREFORE**, Plaintiff, JABRETTA REASON, demands judgment against Defendant, CARNIVAL CORPORATION & PLC, for damages suffered and costs incurred, as well as for damages and costs that REASON will suffer and incur in the future, as a result of her bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, lost wages, lost earning capacity, loss of the value of REASON'S vacation, cruise, transportation costs, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life, for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

## COUNT IV
## NEGLIGENT FAILURE TO WARN OF DANGEROUS CONDITION

63.   REASON hereby adopts and re-alleges each and every allegation in paragraphs 1-21, 25, and 28-32, as if set forth herein.

64.   At all times relevant, CARNIVAL owed a duty to exercise reasonable care under the circumstances for the safety of its passengers, including REASON.

65.   Such duty includes, but is not limited to, the duty that CARNIVAL owes to warn passengers of any dangers that it knew or should have known were not open and obvious to

REASON.

66.   Such duty also includes, but is not limited to, the duty to warn passengers of hazards, which passengers may reasonably be expected to encounter.

67.   At all times material, CARNIVAL, through its vessel, crew, agents, employees, staff and/or representatives, who were acting in the course and scope of their employment and/or agency with CARNIVAL, breached the duty of reasonable care owed to REASON and was negligent by failing to warn REASON of the dangerous conditions discussed in **paragraph 13** of the instant Complaint.

68.   Furthermore, CARNIVAL knew or should have known of these dangerous conditions for the reasons discussed in paragraph 17 of this Complaint.

69.   These dangerous conditions were also created by CARNIVAL.

70.   CARNIVAL failed to adequately ensure there were no dangerous conditions that passengers needed to be warned of, and/or CARNIVAL failed to warn REASON despite knowing of the dangers.

71.   These dangerous conditions existed for a period of time before the incident.

72.   These conditions were neither open nor obvious to REASON.

73.   CARNIVAL'S breach was the cause in-fact of REASON'S great bodily harm in that, but for CARNIVAL'S breach her injuries would not have occurred.

74.   CARNIVAL'S breach proximately caused REASON great bodily harm in that the incident that occurred was a foreseeable result of CARNIVAL'S breach.

75.   As a result of CARNIVAL'S negligence, REASON has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, lost wages, lost earning capacity, loss of capacity for the enjoyment of life, expense

of hospitalization, medical and nursing care and treatment, and loss of the value of REASON'S vacation, cruise, and transportation costs.

76.    The losses are permanent and/or continuing in nature.

77.    REASON has suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, JABRETTA REASON, demands judgment against Defendant, CARNIVAL CORPORATION & PLC, for damages suffered and costs incurred, as well as for damages and costs that REASON will suffer and incur in the future, as a result of her bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, lost wages, lost earning capacity, loss of the value of REASON'S vacation, cruise, transportation costs, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life, for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

## COUNT V
## NEGLIGENT DESIGN, INSTALLATION, AND/OR APPROVAL OF THE SUBJECT GANGWAY AND THE VICINITY

78.    REASON hereby adopts and re-alleges each and every allegation in paragraphs 1-21 and 26-32, as if set forth herein.

79.    At all times material hereto, CARNIVAL owed a duty to its passengers, and in particular a duty to REASON, not to permit dangerous conditions to be in places where they could harm passengers, such as those non-crowd control related dangerous conditions discussed in **paragraph 13** in the instant Complaint, as well as to design and install reasonable safeguards.

80.    At all times material hereto, CARNIVAL participated in the design process of the subject vessel by generating design specifications for the shipbuilder to follow, and to put the

vessel on which REASON was injured into the channels of trade, and/or CARNIVAL approved of the subject vessel's design, including the design of the subject gangway and the vicinity.

81.    At all times material hereto, CARNIVAL manufactured, designed, installed, and/or approved of the *Spirit*, including providing specifications to the shipbuilder in the original build process, and/or during its refurbishments, and as such owed a duty to its passengers, and in particular a duty to REASON, to design, install and/or approve of the subject gangway and the vicinity without any defects.

82.    At all times material hereto, CARNIVAL through its agents and/or employees who were acting in the course and scope of their employment and/or agency with CARNIVAL, designed, installed, and/or approved of the subject gangway and the vicinity involved in REASON'S incident, which was also in violation of the applicable industry standards/recommendations and/or other guidelines.

83.    CARNIVAL provides design elements of the vessels to the ship builder and/or approves of design elements which include the subject gangway and the vicinity.

84.    CARNIVAL maintains the contractual right to participate, review, modify, and/or reject the design plans and drawings of the vessels, including the *Spirit*, during the new build process.

85.    CARNIVAL has the right to enter the ship and inspect it during construction to ensure that it is being constructed in accordance with the design specifications and has a right to insist on changes when safety concerns are identified.

86.    CARNIVAL has the right to inspect and reject design elements before taking possession of the ship.

87.    However, CARNIVAL permitted the non-crowd control related dangerous conditions

discussed in **paragraph 13** of the instant complaint to be present in the subject gangway and the vicinity without correcting these design deficiencies and did not design and install reasonable safeguards.

88.    Furthermore, CARNIVAL knew or should have known of these dangerous conditions for the reasons discussed in paragraph 17 of this Complaint.

89.    The design flaws that made the subject gangway and the vicinity involved in REASON'S incident unreasonably dangerous were the direct and proximate cause of REASON'S injuries.

90.    CARNIVAL is liable for the design flaws of the vessel, including of the subject gangway and the vicinity involved in REASON'S incident, which it knew or should have known of.

91.    CARNIVAL failed to correct and/or remedy the defective conditions, despite the fact that CARNIVAL knew or should have known of the danger(s).

92.    CARNIVAL'S breach was the cause in-fact of REASON'S great bodily harm in that, but for CARNIVAL'S breach her injuries would not have occurred.

93.    CARNIVAL'S breach proximately caused REASON great bodily harm in that the incident that occurred was a foreseeable result of CARNIVAL'S breach.

94.    As a result of CARNIVAL'S negligence, REASON has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, lost wages, lost earning capacity, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of the value of REASON'S vacation, cruise, and transportation costs.

95.    The losses are permanent and/or continuing in nature.

96.    REASON has suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, JABRETTA REASON, demands judgment against Defendant, CARNIVAL CORPORATION & PLC, for damages suffered and costs incurred, as well as for damages and costs that REASON will suffer and incur in the future, as a result of her bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, lost wages, lost earning capacity, loss of the value of REASON'S vacation, cruise, transportation costs, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life, for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

**COUNT VI**
**VICARIOUS LIABILITY AGAINST CARNIVAL FOR THE NEGLIGENCE OF THE SHIP'S MEDICAL STAFF**

97.    REASON hereby adopts and re-alleges each and every allegation in paragraphs 1-16 and 28-32, as if set forth herein.

98.    CARNIVAL, through the ship's medical staff (including its physicians and nurses), and the ship's crew, owed a duty to exercise reasonable care under the circumstances for the safety of its passengers.

99.    Such duties include, but are not limited to, providing such medical care and assistance as would an ordinarily prudent person under the circumstances.

100.   At all times material, the ship's medical staff (including its physicians and nurses), and the ship's crew, were full-time employees and agents of CARNIVAL, subject to its direction and control, who were engaged in the activity of discharging CARNIVAL'S obligation to make such medical aid and assistance available to its passengers as would an ordinarily prudent person

under the circumstances.

101.  CARNIVAL is estopped to deny that the ship's medical staff (including its physicians and nurses), and the ship's crew, were its agents and/or employees and/or servants.

102.  CARNIVAL directly paid the ship's medical personnel and regular crew a salary (i.e., payment by time) for their work in the ship's hospital and in treating passengers.

103.  CARNIVAL created, owned, directly provided, and operated, the medical center to be used by the ship's medical personnel and passengers.

104.  CARNIVAL pays to stock the medical center with all supplies, medical machinery, various medicines, and equipment to be used therein, regularly stocking and restocking same.

105.  CARNIVAL collected all medical revenues directly from passengers and generated a profit on the sale of medical services, supplies, and equipment made by the ship's medical personnel to the passengers of the vessel.

106.  CARNIVAL'S marketing materials described the infirmary in proprietary language.

107.  The ship's medical personnel were members of the ship's crew; they were subject to the ship's discipline; they were required to wear the ship's uniforms; they (and, in particular, the ship's physicians) were members of the ship's officer's compliment, and at all times they were subject to termination, or other discipline, by CARNIVAL.

108.  CARNIVAL provided the ship's medical personnel and regular crew certain forms of liability insurance and/or indemnification rights.

109.  At all times material hereto, CARNIVAL, through the ship's medical staff (including its physicians and nurses), and the ship's crew, was careless, negligent, and breached its duties **as follows**:[3]

---

[3] **REASON also pleads the following facts**:

a. After REASON was taken to the medical center by wheelchair at or about approximately three to five minutes after her incident, the ship's doctor failed to diagnose her injuries, including her torn rotator cuff and fractures.

b. REASON was prescribed an insufficient amount of pain medicine for her trip home, such that she was in great pain for a longer amount of time.

c. CARNIVAL failed to promptly provide REASON with proper medical and/or first aid care and attention.

d. CARNIVAL failed to timely and properly attend to REASON, to her injuries, and to her pain.

e. CARNIVAL failed to provide reasonable medical and/or first aid care.

f. CARNIVAL failed to timely and properly treat and care for REASON.

g. CARNIVAL failed to timely and properly examine REASON'S injuries.

h. CARNIVAL failed to take proper measures to secure proper treatment for

---

"[W]hat time the Plaintiff was attended to by the ship's medical staff[:]" approximately "May 15, 2022 10:01 UTC-04:00[.]"

"[W]hat time the Plaintiff fell[:]" as stated in this complaint, "at approximately 9:15 a.m."

"[W]ho from the medical staff attended to the Plaintiff[:]" the ship's physician, Dr. "Manotshi Motloung[,]" and the ship's nurse, "Tijo Mathew[.]"

"[H]ow the Plaintiff was taken from the site of h[er] accident to the ship's infirmary[:]" REASON was taken to the medical center by wheelchair.

"[T]he measures taken by the ship's medical staff to treat the Plaintiff[:]" see paragraph 16 of this complaint.

"[H]ow any of those facts contributed to the Plaintiff's injuries[:]" see paragraph 16 of this complaint. **Furthermore, the failure to prescribe adequate pain medicine for REASON's trip home caused her to suffer additional pain**.

REASON, including unreasonably delaying taking measures to secure such proper treatment.

    i.   CARNIVAL failed to properly bring and/or arrange for REASON to be brought to a reasonable hospital/emergency room within a reasonable amount of time.

    j.   CARNIVAL failed to give REASON proper discharge instructions.

    k.   CARNIVAL failed to give REASON adequate pain medicine.

110. **The standards of reasonable medical care under the circumstances required that CARNIVAL avoid the failures enumerated in the paragraph above**.

111. Pain is a frequently experienced, yet oftentimes overlooked factor in wound care and wound healing. It is undeniable that pain affects wound care practice, and unresolved pain negatively impacts both wound healing and a patient's quality of life.

112. Under the doctrine of *Respondeat Superior*, employers are vicariously liable for the negligent acts or omissions by their employees and/or other agents within the course of their employment and/or agency.

113. CARNIVAL is therefore vicariously liable for all injuries and damages sustained by REASON as a result of the negligence of the ship's medical staff (including its physicians and nurses), and the ship's crew.

114. At all times material hereto, the aforementioned acts and/or omissions on the part of CARNIVAL'S ship's medical staff (including its physicians and nurses), and the ship's crew, fell below the standard of care.

115. The negligence of CARNIVAL'S ship's medical staff (including its physicians and nurses), and the ship's crew, proximately caused REASON great bodily harm in that, but for

CARNIVAL's negligence, REASON'S injuries would not have occurred and/or said injuries would have been substantially lessened.

116. CARNIVAL, through its employees and agents, including the ship's medical staff, knew or should have known that the medical procedures they employed violated and/or did not meet reasonable standards of medical care.

117. As a result of CARNIVAL'S negligence, REASON has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, lost wages, lost earning capacity, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of the value of REASON'S vacation, cruise, and transportation costs.

118. The losses are permanent and/or continuing in nature.

119. REASON has suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, JABRETTA REASON, demands judgment against Defendant, CARNIVAL CORPORATION & PLC, for damages suffered and costs incurred, as well as for damages and costs that REASON will suffer and incur in the future, as a result of her bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, lost wages, lost earning capacity, loss of the value of REASON'S vacation, cruise, transportation costs, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life, for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

## COUNT VII
## APPARENT AGENCY
## FOR THE ACTS OF THE SHIP'S MEDICAL STAFF

120.  REASON hereby adopts and re-alleges each and every allegation in paragraphs 1-16 and 28-32, as if set forth herein.

121.  At all times material hereto, the ship's medical staff and regular crew represented to REASON and to the ship's passengers as employees and/or agents and/or servants of CARNIVAL, in that:

a.  The medical staff wore a ship's uniform;

b.  The medical staff ate with the ship's crew;

c.  The medical staff was under the commands of the ship's officers;

d.  The medical staff worked in the ship's medical department;

e.  The medical staff was paid a salary by CARNIVAL;

f.  The medical staff worked aboard the vessel;

g.  The medical staff spoke to REASON as though they had authority to do so by CARNIVAL.

122.  In addition, CARNIVAL further represented to REASON that the vessel's medical staff and regular crew were agents and/or employees of CARNIVAL through its marketing materials and through other official statements that described the infirmary in proprietary language, including language such as the "Carnival *Spirit*'s Medical Center/our infirmary/our medical center," and through encouraging REASON to make use of "its" infirmary/medical center if REASON was in need of medical attention.

123.  Furthermore, at no time did CARNIVAL represent to REASON in particular, or the ship's passengers in general, in a meaningful way that the vessel's medical staff and regular crew

were not agents or employees of CARNIVAL.

124. At all material times, REASON reasonably relied on the representations to REASON'S detriment that the medical staff and regular crew were employees, and/or agents, and/or servants of CARNIVAL.

125. It was reasonable to believe that the medical staff and regular crew were CARNIVAL'S agents because they wore a ship's uniform. In addition, at all times material, the medical staff spoke and acted as though they were authorized to do so by CARNIVAL.

126. This reasonable reliance was detrimental because it delayed REASON from receiving proper medical treatment and/or REASON would not have gone on the subject cruise with CARNIVAL had REASON known that the medical staff and regular crew on the ship were not CARNIVAL'S agents.

127. CARNIVAL is estopped to deny that the medical staff and regular crew were its apparent agents, and/or apparent employees, and/or apparent servants.

128. CARNIVAL had a duty to provide REASON with reasonable care under the circumstances and through the acts of its apparent agents breached its duty to provide REASON with reasonable care under the circumstances.

129. REASON'S injuries were aggravated due to the fault and/or negligence of CARNIVAL through the acts of its apparent agents **as follows**:[4]

    a. After REASON was taken to the medical center by wheelchair at or about approximately three to five minutes after her incident, the ship's doctor failed to diagnose her injuries, including her torn rotator cuff and fractures.

    b. REASON was prescribed an insufficient amount of pain medicine for her

---

[4] **See footnote 12.**

trip home, such that she was in great pain for a longer amount of time.

c.  CARNIVAL failed to promptly provide REASON with proper medical and/or first aid care and attention.

d.  CARNIVAL failed to timely and properly attend to REASON, to her injuries, and to her pain.

e.  CARNIVAL failed to provide reasonable medical and/or first aid care.

f.  CARNIVAL failed to timely and properly treat and care for REASON.

g.  CARNIVAL failed to timely and properly examine REASON'S injuries.

h.  CARNIVAL failed to take proper measures to secure proper treatment for REASON, including unreasonably delaying taking measures to secure such proper treatment.

i.  CARNIVAL failed to properly bring and/or arrange for REASON to be brought to a reasonable hospital/emergency room within a reasonable amount of time.

j.  CARNIVAL failed to give REASON proper discharge instructions.

k.  CARNIVAL failed to give REASON adequate pain medicine.

130. **The standards of reasonable medical care under the circumstances required that CARNIVAL avoid the failures enumerated in the paragraph above**.

131. Pain is a frequently experienced, yet oftentimes overlooked factor in wound care and wound healing. It is undeniable that pain affects wound care practice, and unresolved pain negatively impacts both wound healing and a patient's quality of life.

132. As a result of CARNIVAL'S negligence, REASON has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of

independence, lost wages, lost earning capacity, loss of capacity for the enjoyment of life, expense

of hospitalization, medical and nursing care and treatment, and loss of the value of REASON'S

vacation, cruise, and transportation costs.

133.  The losses are either permanent or continuing in nature.

134.  REASON has suffered these losses in the past and will continue to suffer such loses

in the future.

**WHEREFORE**, Plaintiff, JABRETTA REASON, demands judgment against Defendant,

CARNIVAL CORPORATION & PLC, for damages suffered and costs incurred, as well as for

damages and costs that REASON will suffer and incur in the future, as a result of her bodily injury,

pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical

care and treatment, nursing care and treatment, lost wages, lost earning capacity, loss of the value

of REASON'S vacation, cruise, transportation costs, loss of important bodily functions, loss of

independence, and loss of capacity for the enjoyment of life, for all court costs, pre- and post-

judgment interest, and for any and all other relief which this Court deems just or appropriate.

## COUNT VIII
## ASSUMPTION OF DUTY FOR THE
## NEGLIGENCE OF THE SHIP'S MEDICAL STAFF

135.  REASON hereby adopts and re-alleges each and every allegation in paragraphs 1-16

and 28-32 as if set forth herein.

136.  CARNIVAL owed REASON the duty to exercise reasonable care under the

circumstances for the safety of its passengers.

137.  Such duties include, but are not limited to, providing such medical care and assistance

as would an ordinarily prudent person under the circumstances.

138.  CARNIVAL elected to discharge this duty by having REASON seen by its own ship's

physicians and/or other crew members.

139.  As such, CARNIVAL voluntarily assumed a duty for the benefit of REASON to use reasonable care in the provision of medical services to REASON.

140.  At all times material hereto, CARNIVAL, through the ship's medical staff (including its physicians and nurses), and the ship's crew, was careless, negligent, and breached its duties **as follows**:[5]

    a.  After REASON was taken to the medical center by wheelchair at or about approximately three to five minutes after her incident, the ship's doctor failed to diagnose her injuries, including her torn rotator cuff and fractures.

    b.  REASON was prescribed an insufficient amount of pain medicine for her trip home, such that she was in great pain for a longer amount of time.

    c.  CARNIVAL failed to promptly provide REASON with proper medical and/or first aid care and attention.

    d.  CARNIVAL failed to timely and properly attend to REASON, to her injuries, and to her pain.

    e.  CARNIVAL failed to provide reasonable medical and/or first aid care.

    f.  CARNIVAL failed to timely and properly treat and care for REASON.

    g.  CARNIVAL failed to timely and properly examine REASON'S injuries.

    h.  CARNIVAL failed to take proper measures to secure proper treatment for REASON, including unreasonably delaying taking measures to secure such proper treatment.

    i.  CARNIVAL failed to properly bring and/or arrange for REASON to be

---

[5] **See footnote 12.**

brought to a reasonable hospital/emergency room within a reasonable amount of time.

j.   CARNIVAL failed to give REASON proper discharge instructions.

k.   CARNIVAL failed to give REASON adequate pain medicine.

141. **The standards of reasonable medical care under the circumstances required that CARNIVAL avoid the failures enumerated in the paragraph above**.

142. At all times material hereto, the aforementioned acts or omissions on the part of CARNIVAL fell below the standard of care.

143. CARNIVAL'S negligence proximately caused REASON great bodily harm in that, but for CARNIVAL'S negligence, REASON'S injuries would not have occurred, would have been substantially lessened, and/or would not have been aggravated.

144. CARNIVAL, through its employees and agents, to wit, the ship's medical staff and regular crew, knew, or should have known, that the medical and first aid procedures they employed violated reasonable standards of medical care.

145. As a result of CARNIVAL'S negligence, REASON has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, lost wages, lost earning capacity, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of the value of REASON'S vacation, cruise, and transportation costs.

146. The losses are permanent and/or continuing in nature.

147. REASON has suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, JABRETTA REASON, demands judgment against Defendant, CARNIVAL CORPORATION & PLC, for damages suffered and costs incurred, as well as for damages and costs that REASON will suffer and incur in the future, as a result of her bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, lost wages, lost earning capacity, loss of the value of REASON'S vacation, cruise, transportation costs, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life, for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

<u>**DEMAND FOR JURY TRIAL**</u>

Plaintiff, JABRETTA REASON, demands trial by jury on all issues so triable.

**Dated:** January 13, 2023.

Respectfully submitted,

*/s/ Matthias M. Hayashi*
**Spencer M. Aronfeld, Esq.**
Florida Bar No.: 905161
aronfeld@Aronfeld.com
**Matthias M. Hayashi**
Florida Bar No.: 115973
mhayashi@aronfeld.com
**Abby H. Ivey, Esq.**
Florida Bar No.: 1002774
aivey@aronfeld.com
**ARONFELD TRIAL LAWYERS**
One Alhambra Plaza, Penthouse
Coral Gables, Florida 33134
P:      (305) 441.0440
F:      (305) 441.0198
*Attorneys for REASON*